## Lovell v. Conley, et al.

(Decided February 27, 1917.)

### Appeal from Johnson Circuit Court.

Fraudulent Conveyances.—Evidence examined and held not suffi-cient to show that the conveyances attacked were fraudulent.

J. K. WELLS for appellant.

FOGG & KIRK and L. D. KENNARD for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

M. F. Conley died some time before 1911, leaving surviving him his widow and four children. He owned at the time of his death some real estate in Johnson county, Kentucky, in which his wife had an estate for life, with remainder to the four children. On April 11, 1911, Robert Conley, one of the children, who had gone to the state of Washington and there adopted the as-sumed name of Robert Miller, executed to the appellant, Lovell, the following paper: "Know all men by these presents that I do hereby assign and transfer to G. E. Lovell all the right, title or interest I may have in the

estate of my deceased father, M. F. Miller, which is now in course of probate in Johnson county, Kentucky, and I hereby authorize the executor or administrator of his estate to pay and deliver to the said G. E. Lovell, any property either real or personal that may come to me out of the said estate." This paper was subscribed and sworn to by Miller before a notary public in the state of Washington, but it was never recorded, or offered for record, in this state. At the time this paper was executed the estate of M. F. Conley was not in course of probate, nor does it appear that there was any executor or administrator, but Robert Conley had a one-fourth undivided interest therein subject to the life estate of his mother.

It appears that in September, 1912, Robert Conley conveyed his interest in his father's estate to his brother, the appellee, Edward Conley, and shortly afterwards Edward Conley conveyed a part of this interest to his sister, Mrs. Bessie Chandler, and the other part to one, A. B. Collins.

It further appears that in October, 1912, Robert Conley died, and in 1913 Lovell brought this suit against Edward Conley, Mrs. Chandler and A. B. Collins, setting up that by virtue of the assignment to him by Robert Conley (Miller) of his interest in his father's estate, he was the owner of his one-fourth interest therein, and that with knowledge of his claim, and in fraud of his rights, Edward Conley procured the deed from Robert Conley, and Mrs. Chandler and Collins, with knowledge of the assignment, accepted the deeds to them. The suit against A. B. Collins, however, was dismissed, and so it will not be necessary to refer again to him.

The defendants answered, and after the case had been prepared for trial, there was a judgment dismissing the petition, and Lovell appeals.

The evidence shows that Robert Conley was a wild, dissipated young man, who had subjected his brother and sisters, as well as other members of the family, to a great deal of trouble and expense on account of his bad habits, and that before April, 1911, he had obtained from them at different times sums of money aggregating as much as his interest in the estate. The evidence further shows that it was to secure this indebtedness that he conveyed to his brother Edward his interest, and in order that his sister might also be protected on

account of sums that she had expended for him, Edward made the conveyance to her heretofore mentioned. These deeds are not in the record, nor does it show the consideration. There is no evidence that Edward Conley knew of the assignment made by Robert to Lovell until some time after Robert conveyed to him his interest in his father's estate. There is, however, some evidence tending to show that Mrs. Chandler, before she took the deed from Edward, had some knowledge of this assignment, although she did not understand what it purported to convey or its meaning or effect. So far as the record shows, this information of the assignment came to her in some letters written to her by Lovell.

It appears that on April 17, 1911, Lovell, who was an attorney in the state of Washington, wrote to Mrs. Chandler telling her about a prosecution for some criminal offense pending against her brother, who had employed him as an attorney. In this letter, which was written after the assignment of the interest to Lovell, he did not mention the assignment, but said that Robert had told him of an interest he had in the estate worth a thousand dollars or more and that Robert wanted Mrs. Chandler to take his interest in the estate and pay the thousand dollars to help get him out of trouble.

On June 5, 1911, Mrs. Chandler replied to this letter and said that Robert did have an interest in his father's estate, but that the property could not be divided until her mother died; that his part was worth about a thousand dollars, and that her mother said he might take a deed to Robert's part of the property and hold the same until money matters could be arranged in some way. In answer to this letter from Mrs. Chandler, Lovell, on June 12, 1911, wrote telling her about the trial, saying that he appreciated the offer made in her letter, and that the matter might be settled on that basis, also advising her that he had an assignment of her brother's interest in the estate. On July 19, 1911, it appears that Lovell wrote another letter to Mrs. Chandler saying that Robert had assigned to him and his partner his interest in his father's estate. In this letter he also said that if Robert, who it seems had disappeared, could be located, they would accept from him a reasonable fee and let him have the interest back. This is all the information Mrs. Chandler had touching this assignment, and, as before stated, Edward Conley knew nothing of it until after the death of Robert.

Passing all question as to the sufficiency of this paper to transfer the interest of Robert to Lovell, there is no evidence in the record upon which to sustain the charge that the conveyance by Robert to his brother, Edward, was either fraudulent or without consideration. On the contrary, the evidence shows that the conveyance was made for a valuable consideration and without any notice whatever on the part of Edward that this paper was in existence. Nor is the evidence sufficient to show that Mrs. Chandler had such notice of the assignment as to charge her with being a party in any plan to defraud Lovell.

It might here be noticed that after taking this deed, Edward and the family spent a considerable sum of money on account of the death and burial of Robert; and these burial expenses, together with what had been advanced to him before the deed to Edward was made, more than exhausted his interest in his father's estate.

Upon the whole case, we see no reason for disturbing the judgment of the lower court and it is affirmed.